## ABRAM B. KNOWLSON v. SARAH BRUIST.

*Fraud—Procuring execution of mortgage.*

The controversy in this case grows out of the claim of the defend-
ant that she never executed the contract and note and mort-
gage, to foreclose which complainant files his bill, with
knowledge of their contents, and the finding of the circuit
judge to the contrary is sustained.

Appeal from Kent. (Grove, J.) Submitted on briefs
June 19, 1891. Decided July 28, 1891.

Bill to foreclose a mortgage. Defendant appeals.
Decree affirmed. The facts are stated in the opinion.

*J. M. Jamison,* for complainant.

*Earle & Hyde,* for defendant.

LONG, J. The bill was filed in this case to foreclose
a mortgage. The proofs were taken in open court, and
a decree entered finding the amount due the complain-
ant on the note and mortgage to be the sum of $1,382,
and ordering foreclosure for that amount. The defend-
ant appeals. It appears that the note and mortgage were
made on October 6, 1888, for the sum of $1,500, and, as
complainant claims, were given to secure the payment of
certain moneys due to him on the purchase of coal,
wood, coke, lime, and cement. The complainant was a
dealer in coal, etc., in the city of Grand Rapids, dealing
in large quantities. The husband of the defendant was
also a dealer in the same commodities in that city, and
prior to the execution of the note and mortgage had had
dealings with the complainant, purchasing from him such
commodities. In August of that year the complainant

refused further to sell to the husband of defendant upon account and time payments, unless secured. The complainant claims that he so advised defendant's husband, and shortly thereafter he proposed to give complainant security upon certain lots in the city of Grand Rapids, the title of which was in the defendant; that, in pursuance of this arrangement, he had an interview with Mr. L. P. Eddy, an attorney of that city, who drafted an agreement, which is set forth in the record, by which he agreed to sell to the defendant, and the defendant agreed to purchase of complainant, coal, coke, etc., upon time payments, and to secure the payments he took a mortgage upon the premises- decribed in the bill.

This agreement recites—

"That said Knowlson, his heirs and assigns, hereby agrees to discharge said mortgage whenever and at such times as said Sarah Bruist shall have paid in full for all coal, wood, coke, lime, cement, etc., furnished as afore-said by said Knowlson, provided such payment in full is made on or before one year from date."

It was also provided in the agreement that complainant should indorse on said note and mortgage the payments made. This agreement was signed by the defendant in Mr. Eddy's office on the same day that the note and mortgage were executed. The complainant thereafter delivered to the husband of defendant coal, wood, etc., to the amount, as complainant claims, of $4,145.01, and the total payments made during the year were $2,711.19, leaving a balance, as complainant claims, with interest, of $1,486.74.

The real controversy between the parties grows out of the claim made by the defendant that she never executed the contract or note and mortgage with knowledge of their contents; that she was deceived and defrauded, the papers were never read to her, and that she supposed, at

the time she signed and executed them, she was simply joining her husband in the execution of a chattel mortgage upon her husband's property; that she was not engaged in business herself, purchased no wood, coal, etc., such as is mentioned in the contract, and did not know that she was binding her separate property to secure the payment of her husband's indebtedness to the complainant. She testified to this positively upon the witness stand, and was supported by her husband in the claim that complainant deceived and intended to deceive his wife as to the character of the papers she was about to execute.

The husband testified that, when the complainant spoke to him about security, he asked him if his wife would not give a mortgage upon her property; that he told complainant he was afraid his wife would not do that, and that he was afraid to ask her about it; when the complainant said, "I will make out the papers, and you sign them, and when she signs she won't know the difference." The defendant and her husband are contradicted in this statement by the complainant and by Mr. Eddy, the scrivener who drew the papers, as well as by Mr. De Hughes, who was in the employ of the defendant's husband in the coal business.

Mr. De Hughes testified that he stated the matter fully to the defendant as to what Mr. Knowlson wanted by way of security, and she assented to the giving of the mortgage upon her property. Mr. Eddy, the scrivener, testified that the matter was explained to the defendant in his office before the papers were executed. Those two witnesses fully corroborate the testimony of the complainant, and from which it appears that the defendant and her husband were fully advised of the contents of these papers, and the defendant executed them knowing

their contents, and that the mortgage was a lien upon her individual property.

The circumstances surrounding the transaction, in my judgment, support the complainant's theory. At the time the mortgage was given, defendant's husband had nearly paid up his past indebtedness to the complainant, and wanted credit for future purchases. The complainant was willing to extend the credit if security was given. It is a little difficult to comprehend, under these circumstances, that the complainant was so anxious to sell upon credit that he was willing to enter into a scheme with defendant's husband to cheat and defraud the defendant by obtaining from her security upon her separate property without her knowledge and consent.

We think the circuit court was not in error in finding the facts in favor of complainant's theory. We are also satisfied that the court was not in error in the amount he found due the complainant.

The decree must be affirmed, with ccsts.

The other Justices concurred.